WALTER S. RICHARDSON, *et ux.,* v. CLARENCE P. GRILL, as Trustee in Bankruptcy of the Estate of WALTER S. RICHARDSON, Bankrupt.

190 So. 255
Division A
Opinion Filed June 30, 1939

*John Ziegler,* for Appellants;
*Albert C. Fordham,* for Appellee.

PER CURIAM.—Clarence P. Grill, as trustee in bankruptcy of the estate of Walter S. Richardson, bankrupt, on April 29, 1933, filed his bill of complaint against appellants, Walter S. Richardson and Rose Harris Richardson, his wife, and also against one V. Mason Weil. Weil was dismissed as a party defendant in the lower court. In substance, the bill sought to subject certain real estate to the claims of creditors on the theory that the property was purchased with funds furnished by the bankrupt. This appeal is from a final decree impressing the property with a trust for the benefit of creditors and authorizing sale of same in such manner and time as ordered by the Referee in Bankruptcy. Appellants filed a petition for rehearing which was granted. The Circuit Court then entered an order reaffirming the decree formerly entered.

The bill of complaint, after setting out the names and residences of the parties, alleged:

1. That Clarence P. Grill was, and still is, the duly elected, qualified and acting trustee in bankruptcy of the estate of Walter S. Richardson, bankrupt, still pending in the District Court of the United States. The appointment of said Trustee in Bankruptcy grew out of a voluntary petition in Bankruptcy filed by said Walter S. Richardson, bankrupt, on December 14, 1932, and he was on the same day duly adjudged a bankrupt.

2. That between 1928 and 1932 Walter S. Richardson is known to have received $66,000 as fees and profits as well as other large sums of money.

3. That the schedule filed in the aforementioned bankruptcy proceedings by Walter S. Richardson shows that his total assets were valued by him as $875.00 The schedule included chickens to the value of $250.00, which had been previously seized and sold under a chattel mortgage foreclosure. The Trustee in Bankruptcy sold a major portion of the assets, receiving $156.00 therefor, and value of the remaining assets is less than $125.00.

4. That claims amounting to approximately $5,000.00 have been filed and allowed in the Estate of Walter S. Richardson, bankrupt, and the assets of said bankrupt are insufficient to pay in full the creditors who have filed their claims in said Bankrupt Court.

5. That Walter S. Richardson "for the purpose of hindering, delaying and defrauding his existing and subsequent creditors" transferred a major portion of the money received by him as above set forth to Rosa Harris Richardson, his wife, on one occasion, (November 18, 1929) transferring $8,000.00 by check to the said Rosa Harris Richardson.

6. That within the last four years defendant Walter S.

Richardson has engaged in various business enterprises, but he was unfamiliar with the conduct of each of them and had no experience or training in any of them.

7. That on May 1, 1931, defendant Walter S. Richardson purchased certain property, paying therefor $4,000.00. Although defendant Walter S. Richardson bought and paid for the said property with his own money, title thereto was taken in the name of himself and wife, Rosa Harris Richardson, as tenants by the entirety, "for the purpose of hindering, delaying and defrauding his existing and subsequent creditors."

8. That between 1929 and 1931 the said Walter S. Richardson acted as receiver of the Whitehall properties in a certain foreclosure suit then pending in the Federal Court. While acting as such Receiver defendant Walter S. Richardson purchased certain bonds of Whitehall Building and Operating Company at fifteen or twenty cents on the dollar. Then he transferred said bonds, amounting in par value to $48,700.00 to one of the defendants, Rosa Harris Richardson, his wife, "without consideration and for the purpose of hindering, delaying and defrauding his creditors and those whom he expected to become his creditors."

The prayer of the bill reads as follows:

"That the above described land and buildings thereon may be impressed with a trust to the extent that it was paid for and improved with money belonging to Walter S. Richardson, bankrupt, one of the defendants, or that it was bought and paid for by Rosa Harris Richardson, one of the defendants, out of the money received from Walter S. Richardson, bankrupt, one of the defendants."

The appellants in their answer admit that defendant Walter S. Richardson received $51,600 between 1928 and 1932, and as such money came into his possession he gave to his wife, Rosa Harris Richardson, something like

$12,000 to $15,000. The record shows that on November 18, 1929, Richardson gave his wife a check for $8,000 and that on or about May 1, 1931, defendants purchased the property involved herein, taking title in themselves as tenants by the entirety. It is alleged that the property was purchased with funds of Rosa Harris Richardson, but there is no competent evidence to support this. From the record as a whole the conclusion is inescapable that the funds used in the purchase of the property came from the defendant Walter S. Richardson.

This leads us to the question of whether there is such a showing of fraud herein that property purchased with funds provided by the debtor and the title thereto taken by him and his wife in the entirety can be made the subject of a suit in equity to impress the same with a trust in favor of existing and subsequent creditors.

The bankruptcy schedule lists the following creditor at the time the money was transferred to Rosa Harris Richardson and at the time the property was purchased:

Callaghan & Company, 401 E.
Ohio St., Chicago Illinois,

| | Value of Securities | Amount of Debts |
|---|---|---|
| Contracted West Palm Beach, Florida, to-wit, June, 1928, Retention title note. | $50.00 | $34.50 |

It also appears that the appellant Walter S. Richardson at that time was an accommodation indorser on a note payable to the Noretta Company on which $468.84 was due. In its proof of unsecured claim the Noretta Company by its president states that the consideration of the debt was the dismissal of certain litigation in which Richardson was interested as attorney and otherwise and for which reasons he indorsed and guaranteed the note. These were the only

debts existing at the time of the transfer of the money to the wife and the purchase of the property.

In McKeown v. Allen, 37 Fla. 490, 20 So. 556, this Court said:

"There is some conflict of authority as to the effect upon the rights of existing creditors of voluntary conveyances by debtors of their real estate. By some authorities it is held that such conveyances by a man indebted at the time is of itself a fraud upon creditors, no matter how innocent or meritorious the motive with which the conveyance was made, or how inconsiderable the part of the grantor's property which is disposed of.

"Upon the other hand, the greater weight of authority supports the proposition that such conveyances are not absolutely fraudulent *per se,* but that they only afford a *prima facie* or presumptive evidence of fraud, which may be rebutted or explained."

Both parties admit that defendant Richardson received more than $50,000 between 1928 and 1932, and the record shows that the amount he owed at the time of the alleged fraudulent conveyance (except current bills which were paid monthly) was slightly more than $500.00. Mrs. Richardson testified that title was taken in the joint names of husband and wife so that in the event either died suddenly without a will, title would revert to the other without having to be administered, that Mr. Richardson was not insolvent at the time, and that title was not taken in the joint names of husband and wife for the purpose of defrauding creditors. This testimony was corroborated by Mr. Richardson. From an examination of the bankruptcy record, income tax returns of Richardson and certain checks written by Richardson during 1929, 1930 and 1931, as well as the above testimony, it appears that the presumption of fraud referred to in the above quoted rule is sufficiently rebutted.

It does not appear that the voluntary conveyance impaired Richardson's financial ability or was done in any way to defraud, hinder or delay his existing creditors.

The following is found in Bigelow on Fraudulent Conveyances (Rev. Ed.) p. 209-210:

"Speaking then with reference to the law of most of the states, on the assumption that the term 'fraud in fact,' when used, includes cases of voluntary conveyances by debtors not in a condition towards their existing creditors to make them, it may be laid down as the more general rule that, whether the claim under consideration arose before or after the conveyance assailed, the question to be considered is the same. That question is: Were the existing debts such as to make it unjust to creditors of the time to withdraw the property in question? If they were, the gift is fraudulent not only towards the existing creditors but also toward those creditors whose claims arose before the existing creditors were all paid off. If the debts were not such as to effect the existing creditors, subsequent creditors clearly cannot complain of the gift."

The property which the trustee is trying to reach was purchased at least a year before any of the obligations due the "subsequent creditors" were incurred. We have held that an estate by the entirety cannot be charged with the separate debts of either spouse. Ohio Butterine Co. v. Hargrave, 79 Fla. 458, 84 So. 376. In this case the property had been held as an estate by the entirety for more than a year, so it cannot be contended that credit was extended the bankrupt by virtue of his ownership of the property. Nor is such showing attempted to be made.

"Decree adjudging that trustee in bankruptcy take nothing by action to have deeds from bankrupt to wife declared void as in fraud of a judgment creditor was required to be affirmed, where it was found, and findings were sup-

ported by the evidence, that title had been acquired by bankrupt as trustee for his wife and another, and that creditor did not extend credit to bankrupt by virtue of ownership of property." Alhizer v. Tate, 130 Fla. 96, 177 So. 325.

We do not believe that proof of a five or six hundred dollar debt owed by a man of considerable means is a sufficient showing in itself of fraud upon which to predicate the setting aside of a voluntary conveyance to himself and his wife. No fraud having been shown it follows that the property is not chargeable with the separate debts of Walter S. Richardson. The decree of the lower court is therefore reversed.

TERRELL, C. J., and BUFORD, and THOMAS, J. J., concur.

BROWN, J., concurs in opinion and judgment.

Justices WHITFIELD and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.